UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIBERTY CORPORATE CAPITAL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-289 |
| | § | |
| JOYCE BRIGGS, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is plaintiff Liberty Corporate Capital's ("Liberty") motion for summary judgment (Dkt. 34), and defendant Sigma Alpha Epsilon, Texas Tau Chapter's ("SAE") cross-motion for summary judgment (Dkt. 37). Upon consideration of the motions, the responses, the reply, the supplemental briefing, the record, and the applicable law, Liberty's motion for summary judgment (Dkt. 34) is GRANTED, and SAE's cross-motion for summary judgment (Dkt. 37) is DENIED.

## BACKGROUND

Liberty filed the instant coverage action on January 4, 2010 seeking a declaration that it owes no duty to defend or to indemnify SAE, Robert Dees ("Dees"), individually and as executive officer of SAE; and Aaron Zane Somers ("Somers"), individually and as executive officer of SAE (collectively the "SAE Defendants"), for claims stemming from a Texas state case brought against them by defendant Briggs.[1] Dkt. 34 at 1. The SAE Defendants counterclaimed seeking a declaration

---

[1] The court will refer to the defendants Joyce Briggs, Individually and as representative of the Estate of Michelle Briggs, and as Friend of Minors, Erin Jamal Briggs and Eriele Latacha Briggs as "Briggs."

that Liberty owed a defense and coverage related to the underlying lawsuit. Dkt. 37 at 1. None of the parties disputes the facts of the underlying lawsuit.

**The Underlying Lawsuit**

On October 21, 2007, Somers was involved in a car crash that killed Michelle Ann Briggs ("Michelle").[2] Dkt. 35-4 at 1. Somers was traveling southbound on Harvey Mitchell Parkway, and Michelle was parked on the shoulder of the road with her hazard lights on. *Id.* The original complaint states that Somers veered out of the main lane on Harvey Mitchell Parkway, onto the shoulder, and collided with Michelle's vehicle from behind. *Id.* at 2. Michelle died from injuries sustained in the collision. Id. Briggs alleged that prior to the accident Somers became intoxicated after consuming alcoholic beverages at the SAE fraternity house. *Id.* Immediately after Somers left the SAE house, his car collided with Michelle's. *Id.* Briggs filed a lawsuit in Texas state court claiming negligence by Dees, Somers and SAE, Texas Tau. Dkt. 35-4 at 8.

**The Policy**

Liberty is the lead underwriter providing insurance coverage for SAE, Inc. through a general liability manuscript policy with Certain Underwriters at Lloyd's, London. Dkt. 35-2 at 3. The Fraternity/Sorority Insurance Program General Liability Coverage policy ("the Policy") provided coverage for the period of December 31, 2006 to December 31, 2007. *Id.* The Policy provided three types of coverage: (1) Coverage A for bodily injury, property damage liability, and fire damage liability, (2) Coverage B for personal and advertising injury liability, and (3) Coverage C for medical payments. *Id.* at 19. In addition, the Policy contained an automobile exclusion, and a special exclusion for violations of the Fraternity Alcohol Policy. Dkt. 35-2 at 24, Dkt. 35-3 at 27.

---

[2] Michelle Briggs will be identified as "Michelle" to avoid confusion with "Briggs," the plaintiffs in the Underlying Lawsuit and defendants in the present lawsuit.

**The Declaratory Judgment Action**

Liberty subsequently filed this action for a declaratory judgment against Briggs, and the SAE Defendants. Dkt. 34. In its complaint and in its motion for summary judgment, Liberty asks the court to declare that it has no duty to defend or indemnify the SAE Defendants because: (1) they are not insureds under the policy; (2) their claims are excluded because the accident arose from the use of an automobile; and (3) their claims excluded because the SAE Defendants violated the Fraternity Alcohol Policy. Id. at 2-3. SAE answered and filed a cross-motion for summary judgment maintaining that Liberty owes it the aforementioned duties. Dkt. 36. Briggs, Dees and Somers each join SAE in opposition of Liberty's motion for summary judgment.

## ANALYSIS

### I. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* The nonmovant must do more than show that there is "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id.* at 255; *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010).

## II.     Contract Interpretation

The parties do not dispute that Texas law applies. Under Texas law, when interpreting an insurance policy a court applies the rules for interpreting contracts generally, reading all parts of the document together and exercising caution not to isolate particular sections or provisions. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "[T]he parties' intent is governed by what they said, not by what they intended to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

"If the insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous. If the policy is not ambiguous, then the court construes the policy as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157, (Tex. 2003)). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The terms used in an insurance contract are given their commonly understood or generally accepted meaning unless otherwise defined in the policy. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 932; *see also Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App.–Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded"). And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931.

### III. Application

Two distinct duties are at issue in the motion for summary judgment pending before the court: the duty to defend and the duty to indemnify. The duty to defend determination centers on whether the factual allegations in the petition allege a covered claim; whereas, the duty to indemnify is established based on the facts proven in the Underlying Suit. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). The duty to defend is broader; thus an insurer may have a duty to defend, yet no duty to indemnify. *Solvent Underwriters Subscribing to Energy Ins. Intern, Inc. v. Furmanite Am., Inc.*, 282 S.W.3d 661, 667 (Tex. App.–Houston [14th Dist.] Feb. 5, 2009, no pet.).

Liberty seeks summary judgment requesting the Court to declare that it has no duty to defend or indemnify the SAE Defendants because: (1) the SAE Defendants are not insureds under the policy; (2) their claims are excluded because the accident arose from the use of an automobile; and (3) their claims are excluded because they violated the Fraternity Alcohol Policy.

### A. Duty to Defend

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Nautilus Ins. Co.*, 566 F.3d at 454. "However, when the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue." *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993) (citing *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452–53 (Tex.Civ.App.–Corpus Christi 1992, writ denied)). Under certain circumstances, courts require a review of the terms of a contract between the insured and a third party. *Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37, 40 (Tex. App–Houston [1st Dist.] 2003, pet. denied). As the Texas Supreme Court noted in *Urrutia v. Decker*, "Texas law has long provided that a separate contract can be incorporated into an insurance policy by an explicit reference clearly indicating the parties' intention to include that contract as part of their agreement." 992 S.W.2d 440, 442 (Tex.1999). "The duty to defend does not depend upon truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend.'" *Nautilus Ins. Co.*, 566 F.3d at 454 (quoting *GuideOne Elite Ins. Co.*, 197 S.W.3d at 307).

6

When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to any claim covered under the policy, then the insurer has a duty to defend the insured with respect to all claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931; *see also Am. Auto, Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex. 2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

But, "when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend." *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994); *see also Chapman v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 171 S.W.3d 222, 228 (Tex. App.–Houston [1st Dist.] 2005, no pet.) ("An insurer has no duty to defend if a petition against an insured alleges facts excluded by the policy."). When the insurer argues that the policy exclusion excerpts coverage, the insurer bears the burden of demonstrating that the exclusion applies. *Utica Nat'l. Ins. Co. of Tex.*, 141 S.W.3d at 203. The Fifth Circuit has explained the burden shifting framework as follows:

7

> The insured bears the initial burden of showing that the claim . . . is potentially within the insurance policy's scope of coverage. If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim . . . potentially within the scope of coverage under the insurance policy.

*Am. Auto. Inc.*, 287 F. Supp. 2d at 664–65 (quoting *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001)).

Even assuming that the SAE Defendants are insureds under the policy—and that is by no means clear—the court finds that Liberty has no duty to defend or indemnify the SAE Defendants based of the Policy's exclusion for claims arising out from the use, operation and ownership of an automobile.

Liberty bears the burden to prove that the automobile exclusion bars coverage under the Policy. *Utica Nat'l. Ins. Co. of Tex.*, 141 S.W.3d at 203. The Policy's automobile exclusion states:

> "Bodily Injury" or "Property Damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water craft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Dkt. 35, App. 38. Liberty maintains that it does not have a duty to defend or indemnify the SAE Defendants because the insurance claim is based on a car accident which falls under the automobile exclusion in the Policy. Immediately after leaving the Jungle Party, Somers was involved in an automobile collision that led to the death of Michelle Briggs. Neither party disputes that the automobile collision occurred, or that the injuries Michelle Briggs sustained were caused by the automobile Somers was driving.

Instead, the SAE Defendants argue that Somers's car falls under the "HIRED AND NONOWNED AUTOMOBILE" endorsement. Dkt. 37 at 15. This endorsement would entitle the SAE Defendants up to $1,000,000 insurance coverage for a hired or nonowned vehicle. *Id.*

8

However, this argument ignores the plain language of the endorsement itself. The "HIRED AND NONOWNED AUTOMOBILE" endorsement only applies to automobiles that are used "in the course of the insured's business." Dkt. 35-3, App. 52. The SAE Defendants bear the burden to show that the accident fell within the scope of the Policy's coverage. *Am. Auto. Inc.*, 287 F. Supp. 2d at 664–65. However, the SAE Defendants made no argument and adduced no summary judgment evidence demonstrating that Somers was acting within the scope of SAE's business when he drove home that night. Therefore, based on the facts alleged in the Underlying Lawsuit and the record before the court, Liberty has no duty to defend the SAE Defendants because their claims are excluded under the automobile exclusion in the Policy.

### B. Duty to Indemnify

Additionally, Liberty seeks a declaration from the court that Liberty also has no duty to indemnify the SAE Defendants for any judgment rendered against them in the Underlying Lawsuit. The SAE Defendants counter that the duty to indemnify is not justiciable, and that this Court is precluded from deciding the duty to indemnify before the underlying state court proceedings are concluded. "Unlike the duty to defend, which arises when a petition seeking damages alleges facts that potentially support claims covered by a liability policy, the duty to indemnify arises from proven adjudicated facts." *Classic Performance Cars, Inc. v. Acceptance Indem. Ins. Co.*, 464 F. Supp. 2d 652, 663–64 (S.D. Tex. 2006) (citing *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 275 (Tex. App.–Houston [1st Dist.] 2001, no pet.) and *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997)). Thus, the Texas Supreme Court has recognized that it may be necessary to defer resolution of the question of coverage, and thus the duty to indemnify, until factual questions have been resolved at trial. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 201 (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).

9

However, when "the insurer has no duty to defend, 'the duty to indemnify is justiciable . . . [if] the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Id.* at 644 (quoting *Farmers Tex. County Mut. Ins. Co.*, 955 S.W.2d at 84). The analog of this argument, which has been recognized by other courts, therefore, is that an insurer with no duty to defend invariably owes no duty to indemnify. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001). Since a verdict in the Underlying Lawsuit against the SAE Defendants would not fall under the Policy's coverage because coverage is precluded by the express and unambiguous terms of the Policy, Liberty has no duty to indemnify the SAE Defendants in the Underlying Suit.

## CONCLUSION

Pending before the court is plaintiff Liberty Corporate Capital's ("Liberty") motion for summary judgment (Dkt. 34), and defendant Sigma Alpha Epsilon, Texas Tau Chapter's ("SAE") cross-motion for summary judgment (Dkt. 37). For the foregoing reasons, Liberty's motion for summary judgment (Dkt. 34) is GRANTED, and SAE's cross-motion for summary judgment (Dkt. 37) is DENIED. Accordingly, judgment is entered for Liberty on its claims for declaratory judgment.

It is so ORDERED.

Signed at Houston, Texas on August 5, 2010.

_____
Gray H. Miller
United States District Judge